Your Honor, I'm Mark Werner. I'm here representing Gregory Boyd. One issue I would like to visit with the court about is the district court's failure to find that the Roos exception applied to Mr. Boyd's state detention pending his federal indictment. As you know, generally a federal arrest and detention trigger the 30-day time period for there to be an indictment. But there can be an exception. And to show that, I guess it has to be shown that a state detention's primary or exclusive purpose is to hold a person until he can be federally indicted. And that's what we asserted happened here. And the district court found otherwise, and we are asserting that the district court clearly erred there. The one case that this court relied upon in remanding this case back to the district court was United States v. Benitez. In Benitez, the state prosecutor said, or took the position, that I'm going to, we're going to go on a case unless I know that the federal government's going to come in and indict him. He did get notice that the federal government was going to come in and indict. So the preliminary hearing date was withdrawn, and thereafter a federal complaint and an indictment came. And that all happened within 30 days. So there was no ruse. Here, the state prosecutor also received notice. The federal indictment didn't happen until mid-February of 06, but way back in mid- October of 05, ATF agents approached her and asked her to consent to, to agree to the idea of a federal indictment, and that she would later dismiss the state case. Then, in the next few weeks, ATF submitted their case to the U.S. Attorney's Office, and this state prosecutor was designated and assigned to be the federal prosecutor also. So she was wearing both hats at that time. We think that those actions alone gave her clear notice that there was going to be a federal indictment, and she was now responsible for indicting the case. Yet, it wasn't for 60 or 70 days that Mr. Boyd was indicted. There was question at the district court hearing whether, what was really her intent? Did she really intend to indict Mr. Boyd? And we think there were several factors that the district court did not address, particularly when, after she became the federal prosecutor. One was, the record clearly showed that she had a clear understanding that a federal, and now she was the federal prosecutor too. Now, when did she get that understanding? She was assigned the case in, on December the 13th. Okay. And on October 20th, before that, is when she was notified of the, of the federal indictment, that they would like to do it, and whether or not she agreed. Okay. Was this case all long-headed for a federal indictment? I'm sorry? Was this case all long-headed for a federal indictment? The record says that, by mid October, the parties seemed to know that it was. There was an email between the prosecutor and the state public defender saying, I told the judge, I'm not going to file any substantive motions because he's going to be taken federally. So there was those types of communications. After she got the case, the record, she testified that she certainly knew that a federal indictment, a federal charge, would be much more potent than a state charge. And of course, after she, she started to prepare the case and work with the ATF agent in preparing for grand jury. More equally important, Boyd's attorney testified at the state court hearing that she had no expectation whatsoever that there would be a state trial. She never talked about it with Boyd. They never talked about trial strategy. She never talked about it with the state prosecutor, who had then become the federal prosecutor. Boyd, for his part, during this period, from he was mad nothing was going on in a state case. He complained a couple of times about it, once to his attorney, once to the state court. He wanted substantive motions filed and nothing was being done. Well, it's not unusual at all, is it, for the state to step aside and allow the feds to move. I mean, this happens every single day, counsel, across the And the mere fact that she becomes a spatial AUSA, that's beside the point at the moment. But this routinely happens all the time. This isn't unusual. And frequently, they do, the wheels, the state wheels stop or put brakes on before, just to allow the federal government to proceed and go to grand court. Right. And your honor, I think the fact showed here that at a certain point here, that's what happened. The state case did not proceed in any kind of meaningful fashion. And what was really going to happen, what was imminent, was the federal indictment. The problem was, once that became clear to everyone, Mr. Boyd continued to sit in state detention for way beyond 30 days. And that's the violation of the Federal Speedy Trial Act. Most times that type of problem is taken care of, as it was in Bonita's. They give the state notice that they're going to indict, and within 30 days, that's exactly what they do. So he's not just sitting in state custody. So that's the difference between this case and I think a lot of situations, in particular the Bonita's case, that this court relied upon. So what is the date you think the 30 days would have started running in this case? Well, your honor, I would say on December 13th, she received notice from an ATF agent that the feds would like to indict. Are you going to disagree with this, or is it okay? But if not, then certainly by December 13th, because she was appointed, assigned the federal case. Okay, so what was the... and both of those dates are beyond the 30-day limit. Yes. So what's the remedy, if we were to find a Speedy Trial Act violation? The remedy under 3162 is a dismissal of the case, and then the district court has to make certain findings of fact, applying three factors, whether or not the dismissal should be with or without prejudice, the seriousness of the case, and this is a serious case, the conduct of the prosecution, and just what the effect on the re-prosecution of a case like this would be on the administration of justice. How does Benitez define Roos? I mean, how... in drawing the line between screw-up and Roos, what is the difference there? Well, I think the difference is as is the actual, the real objective, the prosecution objective on Gregory Boyd was to federally indict him. When that became the case, his state detention actually, primarily, really became directed to that end. So him being in detention just for a state trial, which had become sort of the reason why he was being detained. That's how I understand it. So, when... so your... the way you understand it is that when everybody knew, and things stopped happening in state court, that this was going to go, be tried in federal court, that's when it was a Roos to hold him, that they should have moved him at that point, within the 30 days. Yes, when everyone knew, and when notice was given, and when positive assertive actions were being taken to ready it for a federal grand jury. So the defense by Ms. Kohler, or what seems to be her side of the story, is that she was just an inexperienced AUSA, and didn't know that whether or not there'd actually be a federal trial, or you know, that sometimes, you know, she didn't know whether one would happen or not, and so she just left him there, and she prepared for the state trial. How do you respond to that? Well, I respond to that this way. She was... she was inexperienced to some degree in the federal system. She was an experienced state prosecutor. Is that a defense, or is that... well, yeah, she was inexperienced, and she violated the State Trial Act. I don't think it was. She was an experienced state prosecutor. The facts of the case were very simple, and quite incriminating. There were drugs and guns in the trunk of the car that he was driving. His fingerprint was on the bag. He was nervous during the arrest. He later overdosed after arrest, and had to be taken to the hospital. He admitted he had ingested methamphetamine. Then two days later, when he was re-arrested, they found a drug ledger on him. Pretty incriminating facts. She knew all those, and she had, of course, already taken the step to charge him on the state side with possession with intent to distribute methamphetamine. So, if it wasn't going to be her to charge him, because the criminal chief of the U.S. Attorney's Office had made the decision to indict this person, someone would have. The records showed that another deputy county attorney slash special assistant attorney was really... Mr. Zink was really expecting to get this case, and he wasn't happy when he didn't get it. I mean, this person, Greg Boyd, was going to be indicted, federally, one way or the other, by one person or the other. Well, but as the district, of course, orders suggest, Ms. Kohler, I think her name was, continued to prepare for the February 6th trial date in the state court, and that she was simply proceeding as though the federal indictment was not an absolute certainty. Mm-hmm. And, Your Honor, here's how I saw that. What she said was, what she testified to was, you know, if this had to go to state trial, I was prepared to go. I had issued this as a subpoena. She didn't move to continue it, of course, and she didn't object to any continuance. What she wanted was her not to have to file the motion to continue, but Mr. Boyd to. If she would have been like the Benitez prosecutor, she would have said, you know, if this case doesn't come to an indictment in the January term, we're going to go to trial on February 6th. She never took that position, and as it turned out, no one had to continue it. I mean, the state district, the state court judge already knew that Greg Boyd was going to be taken in the federal system. It was just meandering along within the lax, speedy trial rules of state court, and Greg Boyd, at a point, became there just for that reason, so that he could be held, so the federal indictment would come, and it was going to come. There was no doubt it was ever going to come, and he was kept there for more than 30 days. Can I reserve my time? Yes, you have two minutes left. Thank you. May it please the court, I'm Kurt Almey, I'm the first assistant in Montana. The district court on remand made findings that there was no collusion, and there was no ruse to detain Boyd for the sole purpose of bypassing the requirements of the Speedy Trial Act, and it's our position that the judge did not clearly err in making those findings. In his briefing, in an argument today, counsel for Mr. Boyd has shown no examples where the government, county, or federal ever delayed the state prosecution. He points to Benitez's case, and Benitez, there was even a delay by the state prosecutor, and this court still found that there was no Speedy Trial Act violation. Ms. Kollar did not decide to go forward with this case until February of 2006, and she diligently prosecuted the case until February of 2006. Now, Mr. Werner, in response to the question, said, when did this ruse start? He said October 20th, which was the date that Ms. Kollar received an email from the ATF agent investigating the federal case, giving her a heads up, saying they're thinking of taking this case federal, it will go in November, Mr. Zink will be the prosecutor, two defendants will be charged. Ms. Kollar didn't take that at face value. Those kind of statements she testified are made quite a bit and not followed through on. In fact, in that case, just from Ms. Fox's statements, only one of the two defendants was charged, nobody was charged in November, and Mr. Zink wasn't the prosecutor. So it shows why those statements are, why Ms. Kollar wouldn't necessarily leave that statement. The week before, she had sent an email to in response to an email she had received, saying, we're going forward with trial. This case, state case, is set for November 21st, and we're going to go forward. And she also critically stated the state prosecution will not preclude a federal prosecution. So in her mind, she did not understand that the petite policy may bar a subsequent federal prosecution if the state prosecution goes forward. So in good faith, she is going forward, and that's the uncontroverted testimony. That trial date gets continued, not on motion of the government, but either because it seems most likely because defense counsel filed ex parte motions, so the trial date got bumped. As soon as those motions were decided in December of 2005, I believe it's a day or two after, the county moved to reset the state trial date. Now, why would you move to reset the state trial date if your sole purpose for the charge is to delay the state prosecution until a federal indictment can go forward? And this motion is filed after Ms. Kolar becomes the federal and the state prosecutor. So that is an example of diligent prosecution by the state during this two-month time period of December, January, February. What is the significance? I'm not sure I understand what's being said here when Sheila Kolar writes to Moira Dalton. Okay. Moira Dalton is the defense attorney, right? Okay, so... On October 14. And so Ms. Kolar says, no, that is why he needs to waive and continue. Once we are done, they will continue with their charges and he will have points against him for the sentencing guideline. That's why the DEANBAT needs to waive because it puts him in a bad spot. I'm not sure I understand the significance of that comment. Your Honor, what I understand is to read, and I believe was the testimony of Ms. Kolar at the hearing, was Moira Dalton has sent an email down on the lower part of that sheet saying that understands that this is going to go federal and she says... What does he need to waive? State speedy trial rights. And why did he need to do that? If in order to get a continuance in the state of the state trial date, the defendant would have had to waive his state speedy trial rights. And Moira Dalton says, doesn't think that he will do that. And then she asks, would the state prosecution preclude the federal? And Ms. Kolar says, no, it wouldn't. Though in practical, we know under the Petit policy, under DOJ policy, it very well may have. So she was incorrect in that statement? She was. She misunderstood the Petit policy. Now it is possible that the, if he had gone forward on the state side, that the federal government could have still charged the firearm side. Right. That would have been an open Petit question for discussion. So we may still have gone forward with a federal indictment. And so that takes us to December 13th, when she starts wearing both hats. Okay. Well, then October 14, there's also a comment that he probably won't be indicted before Thanksgiving. That's federally indicted, right? That's correct. And then she says, he's incarcerated anyway on the California hold. Would the state continue it? So she's asking, this is now his lawyer asking Ms. Kolar, would the state continue the trial? Correct. The state trial. And Ms. Kolar says, no, she's going to go forward to trial on November 21st. Okay. And then she doesn't because? The trial's continued and it appears it's, the parties agree and the district judge found that the parties agree that the state trial was continued because defense counsel filed ex parte motions that needed to be ruled on. So the judge continued the trial. Counsel, I have a question on the issue, whether there was collusion on the speedy trial issue. What are the key findings of fact that were made by the district court? And what's the evidence in support of them? Just under a traditional analysis of when something is, is or is not clearly erroneous. You're asking about collusion. Your honor, I have to say, I have not found a lot of gloss in the case law discussing the definition of collusion or ruse. The way I understand the test is collusion. Is there some sort of back, back room agreement in order to then create this ruse? Is there some sort of communication going on between the state and federal authorities? And in this case, the judge found that there was no collusion up until the time that Ms. Kollar was assigned both hats. Obviously, when she's wearing both hats, you don't have to have communication because we have the same individual making both decisions, at least from the prosecution side. But prior to that, the judge found that there was no collusion between the ATF agent and between Ms. Kollar and found, in fact, that the only communication, which would be the underlying base finding, was a courtesy contact or courtesy call. And in fact, the only thing in the record that's clearly demonstrated is that October 20th email. How often does this take place, where the state prosecutor is appointed as a spatial AUSA? Is this a customary type of procedure, maybe limited to the hour where they're assigned to the same case? I don't know how widespread it is. I know that since this has come out, that our district has stopped this practice. I think that's what's the most troubling aspect of it, is that, you know, she signed her, Kollar signed the U.S. Attorney's Office Conflict of Interest form on January 6th, saying she had no conflict being the federal prosecutor. And then it was not until February 16th that she takes him, these are findings by the district court judge, that she takes him to have a federal indictment. And that seems to be more than 30 days. So you never, that's the, to me, is the most problematic factual findings of the district court. That would be more than 30 days, Your Honor, that we would still argue there was no ruse during that time period, because for two reasons. First of all, Ms. Kollar had not decided to go forward with this case federally. In that regard, it's no different. I mean, this is what's so troubling. Now she's the same person doing both, and it's completely in her hands. She could go the next day and indict. Instead, she waits longer than 30 days. Well, she would, we only have grand jury once a month, but yeah, she could go. No, but that's not the point. Right. She's in control, but she's only, as she testified, she's only in control up to a certain point. She still has to get sign-off from the criminal chief before the case can go. But that's still, this is what my point is, it doesn't matter. I mean, all of this, she was inexperienced, she had to get sign-off, all of that is all the stuff that the Speedy Trial Act is designed to prevent. It says, all right, if you're going to try this guy, you get him indicted within the 30 days, or you're going to have a motion to dismiss the indictment. And these are just excuses. The fact of the matter is, she knew she was doing that case federally on January 6, 2006. And all the other findings, like, well, she was inexperienced, she didn't know what she was doing, she had to go here, she had to go there, that doesn't alter the guiltiest sin, based on what I've read. But it doesn't change the fact that he's sitting in state jail without having the Federal Speedy Trial Act. And, Your Honor, I would respond to that by saying, you know, although it's in Ms. Kolar's hands, I don't think that time period was unreasonable to go forward in good faith to bring that indictment. I mean, think of all the steps she had to do. Right, but that's not the point. The Act says, you know, maybe if you've gone to somebody, a judge, if she'd gone to the judge and said, we need you to find that this extra time is justified, and a judge made those findings under the Act, which is routine. I'm sure Judge Mills knows that. When I was a district court judge, I did that fairly routine, to make those findings and excuse delay. That would be one thing. Well, but in this case, again, the ruse is really whether or not the state prosecution is being used as a ruse. The emphasis isn't on the Federal side. Again, they're in state custody, and there is no ruse. He's not being solely detained in state custody to bring a Federal indictment. This state case is going forward. She's the prosecutor on the case. She's preparing for trial. We go to January 6th. She testifies she's going to trial. She took trial preparations. She fully expected to go to trial on January 6th. Again, no different than the Benitez case. This state case was going forward, and in fact, if it hadn't continued, she would have gone to trial. When Boyd's Federal case was open and assigned to Kohler on December 13th, are you telling, there's no finding in here, but are you saying she was planning at that point to try him in the state and Federal system? In fact, on December 15th, two days after the case was assigned to her, the county filed a motion in state district court to get that trial date reset so they could get to trial, contrary to delaying the state case. Who filed it? Was Ms. Kohler the one who filed it? It wasn't Ms. Kohler. It was one of her co-deputies filed the motion. Filed it almost right after the ex parte motions for the first trial had been filed. Again, a show of diligence, I would argue, on the side of the county, as opposed to a sign of delay. And then Ms. Kohler, the only other evidence in the record is going into February 6th, the state trial date. Ms. Kohler testified she was prepared to go forward to trial. And it was the district court that continued the trial, not Ms. Kohler. And so if there's any point where the Speedy Trial Act date should start counting, it's February 6th. And that would be 10 days to February 16th when the federal indictment is brought. Because that state court case was not solely to ruse. What do you base the February 6th date on? Beg your pardon? What do you base the February 6th date on? That was the state trial date that she was prepared to go to trial on. So again, the state case wasn't to ruse, can't be to ruse if you're prepared to go to trial and about another AUSA that was really in line to get this case and was quite disturbed over the fact that he didn't? I think that the record reflects that back in 2005, that the ATF agent Jackie Fox was working with another deputy county attorney slash Sousa, Ed Zink, who's a firearms prosecutor. And it wasn't until November that management in our office assigned the case to Sheila Kohler after it was presented, instead of to Ed Zink. So she wasn't the assigned prosecutor on the case till December 13th, federally. When she was made the special AUSA? That's right. And who makes that decision, just from a practical standpoint? In the record, it shows it's our criminal chief and our drug unit coordinator. If it's a drug case, our drug unit coordinator is also. So they assigned the case to Ms. Kohler. So just to get on remedies, suppose we were to find there was a ruse. Does it go back to the district court and then he can leave the conviction in place if he finds that it wasn't prejudicial? That's correct. He'll have to hold hearings under the three-part test to determine whether dismissal should be with or without prejudice. Those tests are set forth in Pena-Carrillo 46F3879. What does he look at in those? First prong is the seriousness of the offense. In this case, we'd argue it's very serious. 29.7 grams of pure meth, two firearms. The facts and circumstances of the case which led to dismissal. In this case, there's no finding of bad faith. In fact, there's a finding of good faith by the district court judge. So that would argue for without prejudice. And then the impact of the prosecution on the administration of this chapter and the administration of justice. Again, the prosecutor acted in good faith and there's no need for deterrence. So we'd argue all three of those factors would argue in favor of dismissal without prejudice. But we are coming up on a statute of limitations. Okay, that's my next question. So you would have to retry. Would you have to re-indict him? The grand jury would have to indict him before July of this year. So there is some time pressure. But again, we would strenuously argue that there was no ruse in this case at all. The district court judge made that finding of no collusion. He made the finding of no ruse. And we'd argue that those findings were not clearly erroneous. I see my time is up. Thank you, counsel. I think you have about two minutes. Your Honor, where I believe, where we believe the district court erred in its findings and in its amended order was that it really didn't address what happened in this state case and what was happening in the federal case after the And that is when things coalesced. You mean as a special U.S.A.? Yes. That's when things coalesced. That's when everything came together. That's when she was making the decisions on his detention and on everything about him, really, in both cases. And the court, the district court really didn't address that. And I think that was, I think that was its biggest error. I do know that the state prosecutor testified that she didn't know if she was going to bring the indictment, etc. She really never said why, though, in terms of whether or not facts were troubling. And I'm not going to recount the facts because I already gave those to you. So, Your Honor, the basic point here of us is this. There pointed towards a federal indictment. He himself knew, thought, felt he was simply just sitting, waiting for the federal shoe to drop. And that's what happened. And saying you're prepared to try a case if you have to, that doesn't bespeak what your real intent was. And there were a whole lot of other factors going on here which showed that the real intent here was to prosecute him on the first bang for the buck. The federal indictment had a 924C charge. Montana criminal statutes had no parallel charge. So, prosecutorial sense-wise, it made no sense to go any other way than to prosecute him federally. Everyone knew that. The ATF agent knew it. Boyd's attorney knew it. Boyd knew it. Even the state district judge knew it. Thank you. All right. Thank you, counsel. U.S. v. Boyd will be submitted.
judges: Mills, Wardlaw, Gould